## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Travis James Henry,

                  Petitioner,     Case No. 17-cv-13362

v.                             Judith E. Levy
                                 United States District Judge

Erik Balcarel,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Travis James Henry filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) Petitioner is confined at the Thumb Correctional Facility in Lapeer, Michigan pursuant to a 2014 armed robbery conviction by a jury. (*Id*.) He raises four claims for habeas relief: (1) the sufficiency of the evidence; (2) the admission of other acts evidence; (3) the admission of allegedly irrelevant evidence; and (4) the conduct of the prosecutor. (*Id*.) The Court denies the petition, denies a certificate of appealability and denies permission to proceed *in forma*

*pauperis* on appeal.

## I.    Background

Petitioner's conviction arises from the robbery of a Halo Burger restaurant in Genesee County, Michigan in 2013. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On Sunday, March 17, 2013, defendant entered a Halo Burger in Genesee County where Jennifer Thomas was working as a shift manager and Elizabeth Murphy was working as a crew member. At approximately 11:10 a.m., defendant approached Thomas at the counter and demanded all the money that was in the till. Thomas asked defendant whether he was "f* * *ing serious" and defendant said, "Yes, I am, don't move, don't push a button, give me all the money in your till." Thomas observed that defendant had strawberry blond/reddish facial hair. He was wearing a dark-blue zip-up hooded sweatshirt (hoodie) that had an insignia on the left side. Defendant's hands were in his pockets, but the pockets, as she described them, "bulged forward." Thomas demonstrated for the jury how defendant held his hands in his pockets. She was not sure whether defendant actually had a weapon, but she did not take any chances. Thomas turned over the contents of the register: three $10 bills, six $5 bills, and thirty-five $1 bills.
>
> Murphy also indicated that she observed defendant. He had strawberry-blond facial hair and had his hands in the pockets

2

of his hoodie "bulging forward." Like Thomas, Murphy testified that she assumed defendant had a weapon. She activated the alarm button after defendant left.

The prosecutor presented a witness who placed defendant in the area of the Halo Burger near the time of the robbery. Kuldip Singh testified that he worked at the Shell gas station in Burton and that an individual matching defendant's description was in his store at approximately 10:45 a.m. that day. The Shell station maintained surveillance cameras and Singh cooperated in finding an image of the individual, which was later shown to Thomas and Murphy at the Halo Burger. Both Thomas and Murphy separately identified the man in the surveillance photo as the robber. They both also separately (and immediately) chose defendant's image from a photo array shown to them several days later.

An officer on patrol heard about the robbery from dispatch. The alert was accompanied by a description of the robber. The officer proceeded to a common drug location because in his experience, robbers tended to use the proceeds of their crimes for drugs. The officer pulled up near a maroon Grand Prix and noted that the driver's appearance matched the description of the robber. He pulled defendant over and while defendant was looking for his license, insurance, and registration, the officer observed "quite a bit of money on the front floorboard under the driver's feet ... up towards the center console." There was also a blue hooded sweatshirt in the back seat. Defendant was arrested. Defendant told officers that he lived in Fenton and that he was coming from his girlfriend's house in Burton and going to his friend's house around the corner. Officers found $75 under the front driver's seat. There was one $10 bill, six

3

$5 bills, and thirty-five $1 bills. There was a screwdriver under the hooded sweatshirt in the middle of the backseat. An officer returned to Halo Burger where Thomas confirmed that the hoodie taken from the vehicle defendant was driving was the same hoodie the robber had been wearing.

The jury was instructed on armed robbery, unarmed robbery and larceny from a person. It convicted defendant of armed robbery. Defendant was sentenced as a fourth-offense habitual offender to 240 to 480 months imprisonment.

*People v. Henry*, 315 Mich. App. 130, 133–35 (2016).

Following his conviction and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including those raised on habeas review. The court denied relief on those claims and affirmed Petitioner's conviction and sentence. *Id*. at 135–50. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Henry*, 500 Mich. 931 (2017). The court also denied reconsideration. *People v. Henry*, 500 Mich. 1004, 895 N.W.2d 524 (2017).

Petitioner then filed his federal habeas petition raising the following claims:

1.) Insufficient Evidence to Sustain conviction of Armed Robbery 2.) The Court erred in allowing improper 404(b)

4

evidence. 3.) Admission of irrelevant evidence. 4.) Improperly shifting burden of proof.

(ECF No. 1, PageID.2.)

Respondent has filed an answer to the petition contending that it should be denied because the last claim is procedurally defaulted and all claims lack merit. (ECF No. 8.)

## II.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state-court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state-court's decision must have been more than

incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state-court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fair[-]minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fair[-]minded jurists could disagree that those arguments or theories are inconsistent with the

holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Id*; *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail if it is within the "realm of possibility" that fair[-]minded jurists could find the state-court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state-court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state-court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an

unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state-court's decision.

9

*Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state-court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

### A. Procedural Default

As an initial matter, Respondent contends that Petitioner's last habeas claim is barred by procedural default. The Court declines to address that procedural defense because it is not a jurisdictional bar to review of the merits. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Moreover, federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing

10

*Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Such is the case here. The procedural issue is complex and the substantive claim is more readily decided on the merits. Accordingly, the Court will proceed to the merits of Petitioner's habeas claims.

### B. Sufficiency of the Evidence

Petitioner first asserts that he is entitled to habeas relief because the prosecutor presented insufficient evidence to support his armed robbery conviction. In particular, he alleges that there was no evidence that he possessed a weapon or said that he had a weapon and the armed robbery statute requires that a person have a reasonable belief that he was armed with a dangerous weapon. Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal

12

habeas court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Rather, a federal habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

To establish armed robbery under Michigan law, a prosecutor must prove that:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and

> (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

*People v. Chambers*, 277 Mich. App. 1, 6 (2007); Mich. Comp. Laws § 750.529.

As with any crime, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offenses. *People v. Oliphant*, 399 Mich. 472, 489 (1976); *People v. Yost*, 278 Mich. App. 341,

13

356 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399–400 (2000); *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *People v. Kern*, 6 Mich. App. 406, 409 (1967), and intent or state of mind. *People v. Dumas*, 454 Mich. 390 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> MCL 750.529 provides, in pertinent part:
>
>> A person who engages in conduct proscribed under section 530 [1] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.
>
> Therefore, a prosecutor must prove the following to obtain an armed robbery conviction:
>
>> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a

14

larceny, used force or violence against any person who was **5 present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to *137 reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v. Gibbs*, 299 Mich. App. 473, 490–491, 830 N.W.2d 821 (2013), quoting *People v. Chambers*, 277 Mich. App. 1, 7, 742 N.W.2d 610 (2007).]

Defendant argues that MCL 750.529 requires that the victim have a reasonable belief that a defendant was armed with a dangerous weapon. In so doing, defendant ignores the statute's plain language. The clause "possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon," requires that the defendant either (1) actually possess a dangerous weapon, or (2) possess some article that would lead a person to reasonably believe the article is a dangerous weapon. But the following clause in the statute—"or who represents orally or otherwise that he or she is in possession of a dangerous weapon"—does not contain the same "reasonable belief" requirement. "The word 'or' is a disjunctive term [and] indicates a choice between two alternatives." *Michigan v. McQueen*, 293 Mich.App. 644, 671, 811 N.W.2d 513 (2011) (citation omitted). The second clause provides that a defendant may be guilty of armed robbery if he either (1) orally represents that he has a dangerous weapon, or (2) "otherwise represents" that he possesses a dangerous weapon. For these two alternatives, the victim's

15

fear or belief is irrelevant. Thus, a defendant is guilty of armed robbery if he engages in conduct under MCL 750.530 and (1) he actually possesses a dangerous weapon, or (2) he possesses some article that would lead a person to reasonably believe that the article is a dangerous weapon, or (3) he orally represents that he possesses a dangerous weapon, or (4) he otherwise represents that he possesses a dangerous weapon.

Defendant cites *People v. Saenz*, 411 Mich. 454, 455, 307 N.W.2d 675 (1981), *People v. Jolly*, 442 Mich. 458, 502 N.W.2d 177 (1993), and *People v. Johnson*, 206 Mich.App. 122, 520 N.W.2d 672 (1994), but these cases all involved the old armed-robbery statute, which provided in part:

> Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony....

The 2004 amendment changed the statute significantly. The old statute required that the robber either be armed with a dangerous weapon or possess some article that would lead the person assaulted to reasonably believe it to be a dangerous weapon. The newer version provides the four alternatives previously discussed. The fourth scenario under the amended statute is at play in this case because neither Thomas nor Murphy saw defendant with a weapon and defendant made no oral representation that he possessed a weapon. Defendant's analysis on this issue is flawed to the extent that

16

he focuses on whether Thomas or Murphy had a reasonable belief that defendant was armed. Instead, the focus must be on whether defendant otherwise represented that he was in possession of a dangerous weapon.

There was sufficient evidence to support defendant's armed-robbery conviction because defendant otherwise represented that he was armed with a dangerous weapon. Thomas testified that defendant's "hands were in his pocket [and it] kind of bulged forward." Thomas "wasn't sure what was in those pockets.... I didn't know if he had a weapon." She acknowledged that she did not tell the 911 operator that defendant had indicated having a weapon because she never saw a weapon and defendant never actually said he had a weapon. Instead, Thomas told the operator that "he had his hands in his shirt and I wasn't taking any chances." She also told the officers who responded to the scene that she "was not taking any chances. The hand motion in the front pockets was enough for me to not know." Thomas further acknowledged that while it would not be unusual for an individual to have his hands in the front pockets of his hoodie, defendant's hands "were in but bulged out further than normally would be." Thomas actually put on the hoodie and demonstrated defendant's posture for the jury.

Murphy also believed that defendant was armed. Like Thomas, Murphy was able to demonstrate defendant's posture for the jury. Murphy testified, "I'm not sure what it is, but I'm thinking a weapon" and she further testified that the robber's hands were clearly "bulging forward." She added that it was not unusual to have one's hands in the pockets of a hoodie but "[u]sually, you know, you'll pull your pockets facing

17

down in your hands, not up to your, you know, to your stomach area. Usually you just put your hands in your pockets and they just lay flat...."

Therefore, although no weapon was displayed and defendant did not orally represent that he was armed, he "otherwise represented" that he was armed by placing his hands in his pockets and pushing them forward. There was sufficient evidence to support defendant's armed-robbery conviction.

*Henry*, 315 Mich. App. at 135–39.

The state-court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony of the armed robbery victims, Halo Burger shift manager Jennifer Thomas and crew member Elizabeth Murphy, provided sufficient evidence to establish that Petitioner committed the armed robbery. They both identified Petitioner as the perpetrator and testified that he demanded money while holding his hands in his hoodie pockets, which bulged forward, such that they believed he could be armed with a weapon. *See* 7/9/14 Trial Tr., pp. 14, 34, 67–68. Such testimony, and reasonable inferences therefrom, establish that Petitioner committed the crime of armed robbery. A victim's testimony alone can be

constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases).

To the extent that Petitioner contests the Michigan Court of Appeals' interpretation of state law regarding the elements of armed robbery, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Similarly, to the extent that Petitioner challenges the credibility determinations and inferences the jury drew from the testimony at trial, he is not entitled to relief. It is the job of the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos*, 565 U.S. at 7; *Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker*

19

*v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict was reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, as this Court must do, established beyond a reasonable doubt that Petitioner committed the armed robbery. Habeas relief is not warranted on this claim.

### C. Admission of Other Acts Evidence

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence involving his 2006 armed robbery of a 7-Eleven store. Respondent argues that this claim is not cognizable on habeas review and that it lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-

law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim finding that the other acts evidence was admitted for a proper purpose and was highly relevant. The court explained in relevant part,

> Generally, MRE 404(b) other-acts evidence is admissible if (1) it is offered for a proper purpose, (2) it is relevant, and (3) its probative value is not substantially outweighed by its potential for unfair prejudice. *People v. Knox*, 469 Mich. 502, 509, 674 N.W.2d 366 (2004).
>
> A proper purpose is one focused on something other than establishing the defendant's character to show his propensity to commit the offense. *People v. Johnigan*, 265 Mich. App. 463, 465, 696 N.W.2d 724 (2005). "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence

21

to the action more probable or less probable than it would be without the evidence." *People v. Aldrich*, 246 Mich. App. 101, 114, 631 N.W.2d 67 (2001), citing MRE 401. Under this broad definition, evidence that is useful in shedding light on any material point is admissible. *Aldrich*, 246 Mich. App. at 114, 631 N.W.2d 67 (emphasis added). However, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The prosecution sought to admit evidence of a 2006 incident at a 7–Eleven in which defendant allegedly indicated that he had a gun and that he would shoot the clerk if she did not hand over the money he demanded. The prosecutor argued that the 7–Eleven incident was relevant to defendant's intent "to give the impression that he was armed." It was also evidence of his system in robbing retail establishments. The prosecution also believed that the incident bore a "signature" quality that made it relevant to identity. The trial court ruled, "The prosecutor can use the 404 information about the previous robbery attempt to the extent where they want to show that [defendant] has an intent to threaten with a weapon. The identity information will not be used."

At trial, Rachel Ann Springer testified that on August 8, 2006, defendant came into the 7–Eleven and told Springer that he wanted all the money in the cash register. Springer asked him if he was serious because she could not believe she was being

robbed. She did not see a weapon, but defendant told her "I will shoot you."

The trial court did not abuse its discretion when it permitted the prosecution to present evidence of the 7–Eleven robbery that took place in 2006. The evidence was offered for a proper purpose and was highly relevant. It was not offered for the purpose of showing that defendant was a bad person. Instead, it was offered to give context to the crime itself. Defendant's behavior demonstrated an intent to place his victims in fear that he was armed with a dangerous weapon. While the evidence was undoubtedly prejudicial, it cannot be said that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, especially in light of defendant's claim that he was not armed and that both Thomas and Murphy were unreasonable in their fear that defendant was armed.

*Henry*, 315 Mich. App. at 140–42.

The state-court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, the evidence was properly admitted under Michigan law to show Petitioner's scheme of robbing retail business and his intent to threaten with a weapon and was relevant to give context to the crime. *See* Mich. R. Evid. 404(b). As set forth above, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*,

497 U.S. at 780; *Oviedo*, 809 F.2d at 328; *see also Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. Habeas relief does not lie for perceived errors of state law. *Estelle*, 502 U.S. at 67–68.

Second, Petitioner fails to establish that the admission of the other acts evidence violated due process or rendered his trial fundamentally unfair. As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is so unfair that its admission violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state-court decision can be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Petitioner fails to state a claim upon which habeas relief may be granted on this issue.

Moreover, even if Petitioner states a cognizable claim on the other acts evidence, he is not entitled to relief. Petitioner fails to show that the

admission of the other acts evidence rendered his trial fundamentally unfair. The other acts evidence was properly admitted to show his pattern of robbing retail businesses and his intent to threaten with a weapon (real or implied), and it was relevant to give context to the crime. The prosecution argued as much at trial. Petitioner fails to show that the admission of the other acts evidence was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### D. Admission of Allegedly Irrelevant Evidence

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting evidence that he believes was irrelevant. Specifically, he objects to the admission of evidence that he was at a nearby Shell gas station just minutes before the robbery and to testimony from his former girlfriend about whether his mother asked her to lie at trial. Respondent argues that these claims are not cognizable on habeas review and that they lack merit.

As set forth above, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal

habeas relief. *Estelle*, 502 U.S. at 67–68; *Serra*, 4 F.3d at 1354. Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting habeas relief unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process. *McAdoo*, 365 F.3d at 494; *see also Wynne*, 606 F.3d at 871 (citing *Bey*, 500 F.3d at 519–20); *Bugh*, 329 F.3d at 512.

With respect to the Shell gas station evidence, the trial court admitted the testimony for the purpose of showing that Petitioner was in the area of the Halo Burger at the time of the armed robbery, but did not allow testimony about the attempted robbery at the Shell station or the screwdriver found on a nearby path. *See* 9/30/13 Mot. Hrg. Tr., p. 10. The Michigan Court of Appeals ruled that the trial court did not err in admitting the evidence because it was highly relevant, and its probative value was not outweighed by the danger of unfair prejudice. The court explained in relevant part:

> At trial, Singh testified that an individual matching defendant's description was in his store at approximately 10:45 a.m. on the day of the Halo Burger robbery. The Shell station maintained surveillance cameras and Singh cooperated in finding an image of the individual, which was later shown to Thomas and Murphy at the Halo Burger. There

26

was a seven-mile distance between the Shell station and Halo Burger. The surveillance video from Shell was from approximately 10:45 a.m. and the robbery at Halo Burger occurred at 11:10 a.m.

Contrary to defendant's assertions, the evidence was highly relevant. It not only placed defendant in the vicinity of the Halo Burger at the time of the robbery, but the Shell station incident resulted in surveillance images that allowed the Halo Burger victims (Thomas and Murphy) to identify the robber. It cannot be said that the probative value of the evidence was outweighed by the danger of unfair prejudice, given the limited use of the evidence.

*Henry*, 315 Mich. App. at 145–46.

The state-court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Shell gas station testimony was relevant and admissible to place Petitioner in the vicinity of the armed robbery near the time it occurred and was also relevant because surveillance video from the Shell gas station was used by the victims to identify Petitioner as the perpetrator of the Halo Burger armed robbery. Moreover, the potential for unfair prejudice to Petitioner was mitigated by the trial court's refusal to allow reference to the attempted armed robbery of the Shell gas station or the screwdriver found nearby. Petitioner fails to show that the admission of

27

the Shell gas station evidence rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

As to the girlfriend's testimony about Petitioner's mother's remarks, the Michigan Court of Appeals found that the testimony was irrelevant and that the trial court erred in admitting the testimony. The court then ruled that the error was harmless. The court explained in relevant part:

> At trial, Stephanie Keen testified that she and defendant had been in a romantic relationship for a few weeks before the robbery. She spent the night with him at his mother's house the night before the robbery. When she woke up the next morning at 10:00 a.m., defendant was gone. Also missing was Keen's sister's car that Keen had been using while her sister was in Hawaii. Defendant was arrested while driving Keen's sister's car. Keen identified the blue hoodie as the one that defendant was wearing the night before the robbery. The following exchange took place during Keen's direct examination:
>
> > Q. Okay. Um, can you tell us whether or not at some point in time his mother called you and asked you to testify to something?
> >
> > * * *
> >
> > A. Yes.

28

Q. She did, okay. And what did his mother ask you to testify to?

Defense counsel objected, arguing that it was hearsay evidence and was irrelevant because "[i]t's what his mother may or may not have done." (Emphasis added.) Not addressing the relevancy issue, the trial court ruled, "It's not being offered for the truth of the matter asserted. We can go ahead with it." The exchange continued:

Q. What did his mother ask you to do?

A. To say that I allowed him to use the car.

Q. Say that what?

A. To say I allowed him to use the car.

Q. Was that true?

A. No.

Q. Approximately when was that?

A. It was sometime back in January.

Q. Of this year?

A. Yes.

 The evidence was totally irrelevant. Defendant was not on trial for stealing the vehicle or unlawfully driving it away. The fact that he was arrested in Keen's sister's car was not in dispute at trial. Nor was the testimony relevant to Keen's

credibility to show her "motivation not to lie," as the prosecution argues.

* * *

Given the overwhelming evidence that defendant committed the armed robbery, it cannot be said that this bit of evidence was outcome determinative. Both Thomas and Murphy positively identified defendant as the robber. He was driving a car that contained a hoodie matching the description Thomas had given. There were six $5 bills and thirty-five $1 bills, among other currency, that matched the denominations taken from Halo Burger. Because of the overwhelming evidence against defendant, any error in admitting the evidence was harmless.

*Henry*, 315 Mich. App. at 146–48.

The state-court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117–18 (2007) (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411

30

(6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).

In this case, the prosecution presented significant evidence of Petitioner's guilt at trial, including the victims' testimony identifying him as the perpetrator and indicating that he physically implied that he was armed with a weapon, the testimony that he was in the vicinity before and after the robbery, the testimony that he matched the victims' description of the perpetrator, and the police testimony that he had a matching hoodie and monetary denominations similar to what was stolen from the Halo Burger in his vehicle when he was arrested shortly after the crime. Given such circumstances, any error in admitting the disputed testimony did not have a substantial or injurious effect or influence on the jury's verdict. Habeas relief is not warranted on this claim.

### E. Conduct of the Prosecutor

Finally, Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by improperly shifting the burden of proof to the defense while questioning a witness. Respondent

contends that this claim is barred by procedural default and that it lacks merit.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals denied relief on this claim finding that any error was harmless. The court explained in relevant part:

> We find some merit to this claim as demonstrated by the following exchange between the prosecutor and the lead detective:
>
>> Q. Okay, now we've heard about [defense counsel's] position that the prosecution has the burden of proof and ... it's totally accurate, right?

32

A. Yes.

Q. Okay. Beyond a doubt that's fair and reasonable, right?

A. Correct.

Q. Okay. But um, in your experience as a lawyer (sic), defense attorneys bring forth evidence that favors their client when they have it?

A. Absolutely.

Q. Now in May of 2013, who represented Mr. Henry?

A. Mr. Scott.

Q. And at any time between that date and April 1st, 2014, okay, 12 ½ months, was there any request for fingerprint analysis?

A. No.

Mr. Scott [defense counsel]: Judge, may we approach again?

(At 12:41 p.m., Bench conference held)

Mr. Scott: He's shifting the burden. I'm sorry, he's shifting the burden, Judge.

Mr. Whitesman [prosecutor]: I did not.

Mr. Scott: I don't have to request anything.

Mr. Whitesman: He doesn't.

> Mr. Scott: The one thing that I had to request is, is I got some exculpatory evidence.
>
> Mr. Whitesman: He doesn't.
>
> The Court: I'm not going to let you go any further with this.

"A prosecutor may not imply ... that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v. Fyda*, 288 Mich. App. 446, 463–464, 793 N.W.2d 712 (2010). The prosecution appeared to attempt to shift the burden of proof by intimating that defendant could have requested the collection of possible exculpatory evidence. However, while the attempt to shift the burden of proof was improper, it does not appear that defendant was denied a fair trial. The trial court immediately put a stop to that line of questioning. Additionally, following closing argument, the trial court instructed the jury that defendant was presumed innocent and that defendant was not required to prove his innocence: "The prosecutor has the burden of proving to you beyond a reasonable doubt each and every one of those elements with evidence beyond a reasonable doubt. Of course the Defendant doesn't have to prove a thing because you still presume that he's innocent." Because jurors are presumed to follow their instructions, *People v. Abraham*, 256 Mich. App. 265, 279, 662 N.W.2d 836 (2003), any error was harmless.

*Henry*, 315 Mich. App. at 149–50.

The state-court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It

34

is well-settled that a prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York, 432* U.S. 197, 215 (1977), or imply that the defendant is required to provide evidence to prove his or her innocence. *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006). Accepting that the prosecutor's line of questioning was improper, Petitioner is still not entitled to habeas relief because he fails to show that the prosecutor's conduct rendered his trial fundamentally unfair. In other words, any error was harmless.

As set forth above, for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637; *see also Fry*, 551 U.S. at 117–18 (confirming that the *Brecht* standard applies in "virtually all" habeas cases); *Ruelas*, 580 F.3d at 411 (ruling that *Brecht* is "always the test" in the Sixth Circuit).

In this case, the prosecutor's improper questions were a brief part of the proceedings, defense counsel objected, and the trial court stopped the disputed line of questioning. The trial court also subsequently

35

instructed the jury about the presumption of innocence, the burden of proof, and the proper consideration of the evidence, thereby mitigating any prejudice to Petitioner. Jurors are presumed to follow the court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").

Moreover, as previously explained, the prosecution presented significant evidence of Petitioner's guilt at trial, including the victims' identification testimony, as well as the testimony that he was in the vicinity near the time of the robbery, that he matched the victims' description, and that had a similar hoodie and monetary denominations in his vehicle when he was arrested shortly after the crime. Given such circumstances, the Michigan Court of Appeals' reasonably determined that the prosecutorial error was harmless, *i.e.*, that it did not have a substantial or injurious effect or influence on the jury's verdict. Habeas relief is not warranted on this claim.

## IV. Certificate of Appealability

Petitioner is required to obtain a certificate of appealability ("COA") in order to appeal the Court's decision. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a court evaluates relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the Court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that reasonable jurists would not debate the correctness of the Court's ruling. Therefore, a COA is denied.

An appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court DENIES Petitioner leave to proceed in forma pauperis on appeal. *See* 28 U.S.C. § 1915(a)(3).

## IV.   Conclusion

For the reasons set forth above, the petition is DENIED AND DISMISSED WITH PREJUDICE and a Certificate of Appealability is DENIED.

IT IS SO ORDERED.

Dated: November 5, 2020                    s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 5, 2020.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ
                                           Case Manager